UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                          PLAINTIFF

v.                                                                                              NO. 3:08-CR-142-CRS

WILLIAM LOUIS TOLBERT, JR.                                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of the "Supplemental Petition in Support of Emergency Motion for Compassionate Release/RIS Pursuant to 18 U.S.C. §3582(c)(1)(A) as Amended by the First Step Act" (DN 121)("petition") filed by Defendant William Louis Tolbert, *pro se*. His prior motion (DN 117) was denied. The request for compassionate release contained in that motion was denied for failure to exhaust administrative remedies. *Id.* His request for release to home confinement was denied for lack of jurisdiction. *Id.*

Tolbert is 61 years old and is incarcerated in the Federal Medical Center ("FMC") Lexington where there has been an outbreak of COVID-19 infections among the prison population. As of this writing, the Bureau of Prisons ("BOP") reports that FMC Lexington has tested 892 inmates of which 239 tested positive for the virus. Tolbert is serving a 180-month prison sentence for armed robbery, use of a firearm during a crime of violence, and being a felon in possession of a firearm.

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 11,500,302 confirmed cases worldwide and 535,759 deaths; in the United States, there are 2,877,238 confirmed cases and 129,643 deaths.[3] Further elaboration concerning the health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons, is unnecessary. Suffice it to say that the Court addresses motions for compassionate release, and Tolbert's motion in particular here, with the gravity of the situation in mind.

Tolbert states in his Supplemental Petition that he submitted a request for compassionate release with his case manager, Mr. Grizzell, who acts as the warden's representative, on May 5, 2020. He further states that more than thirty days has passed and he has not received a response. The United States has neither mentioned nor questioned Tolbert's suggestion that he exhausted administrative remedies, but rather addressed the merits of Tolbert's motion. The Court will therefore press forward, deem the exhaustion requirement waived by the United States under *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020), and consider the merits of Tolbert's motion.

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-opening-remarks-at- the-media-briefing-on-covid-19--11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited July 7, 2020).

Tolbert's petition requests that the Court "incorporate [the petition] into, and make it a part thereof his initial pleading requesting compassionate release with RID relief." DN 121, p. 3.

As noted herein, the Court has already determined that it lacks jurisdiction over Tolbert's request for home confinement, stating:

> The home-confinement statutes, 18 U.S.C. § 3624(c) and 34 U.S.C. § 60541(g), do not contain any provision for judicial review. Thus, Defendant's motion as it pertains to home confinement must be dismissed for lack of jurisdiction. *See United States v. Garza*, No. 18-CR-1745-BAS, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) (recognizing, in case in which inmate invoked COVID-19 as reason for home confinement, that "the Court lacks authority to designate home confinement"); *see also United States v. Carter*, No. 1:18-cr-86-JMS, 2020 WL 1808288, at *2 (S.D. Ind. Apr. 9, 2020) (citing *Garza* in denying inmate's request to serve his sentence on home confinement because inmate had "not established that the Court has the power to grant him the relief he seeks"); *United States v. Brown*, No. RDB-16-cr-00553, 2020 WL 1479129, at *1 (D. Md. Mar. 26, 2020) (denying a motion for home confinement filed by a prisoner citing concerns over COVID-19 because "[i]t is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement, pursuant to 18 U.S.C. § 3624(c)").
>
> Likewise, the decision whether to permit a defendant to serve the end of a term of incarceration in a halfway house[4] under § 3624(c)(1) and (2) is within the discretion of the BOP. *See, e.g.*, *Sacora v. Thomas*, 628 F.3d 1059, 1066 (9th Cir. 2010); *Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 318 (D. Conn. 2009). The Court does have the authority to recommend to the BOP that Defendant be permitted to serve the end of his sentence in a halfway house or on home confinement. However, the BOP is more familiar with Defendant's conduct while incarcerated and has the necessary expertise to decide whether placement in a halfway house or on home confinement is appropriate and feasible in Defendant's case. Therefore, the Court declines to make a recommendation to the BOP concerning such placement. *See, e.g.*, *United States v. Black*, No. 2:12-CR-263-3, 2020 WL 2213892, at *2 (S.D. Ohio May 7, 2020).
>
> It appears that after exhausting administrative remedies a prisoner may seek review of a BOP decision regarding placement in home confinement or in a halfway house under the Second Chance Act by filing a 28 U.S.C. § 2241 petition for writ of habeas corpus. *See, e.g.*, *United States v. Witherspoon*, No. 3:14-CR-00179-8, 2019 WL 2514714, at *2 (M.D. Tenn. June 17, 2019) (instructing that should defendant wish to challenge the BOP regarding the execution of his sentence under the Second Chance Act the proper vehicle is a § 2241 petition in the court with jurisdiction over his custodian); *Cucu v. Terris*, No. 17-13646,

---

[4] 1 Halfway houses are also known as community corrections centers and residential reentry centers. *Ashburn v. Eichenlaub*, No. 07-13040, 2008 WL 5244413, at *1 (E.D. Mich. Dec. 16, 2008).

> 2018 WL 1203495 (E.D. Mich. Mar. 8, 2018) (considering a § 2241 petition regarding placement in a residential reentry center under the Second Chance Act). However, the proper venue for a § 2241 petition is in the judicial district where the prisoner is confined or his custodian is located. *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 495-96 (1973); *Roman v. Ashcroft*, 340 F.3d 314, 318-20 (6th Cir. 2003); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (holding that, as a general rule, jurisdiction for a § 2241 petition "lies in only one district: the district of confinement").

DN 120, pp. 2-4. The United States reiterates in its response that the Court lacks jurisdiction to order home confinement, citing *United States v. Garza*, No. 18-CR-1745-BAS, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020), and Tolbert has cited nothing calling the Court's analysis into question. We therefore again conclude that we lack jurisdiction over Tolbert's home confinement request.

Tolbert's request for compassionate release is based upon "'Extraordinary and Compelling Reasons', due to the COVID-19 pandemic." DN 117, p. 1. He states that "the COVID-19 virus has infiltrated this facility and is rapidly escalating" and "Petitioner's age (61) and well documented medical condition makes him especially vulnerable to contracting COVID-19, and possibly dying from it." *Id.*

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for

sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3,[5] the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

---

[5] "While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019);*United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider."
*United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019).

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Tolbert cites as extraordinary and compelling circumstances his concern for contracting the COVID-19 virus and potential for serious illness or death therefrom. However, as of this writing, he contracted the virus and, fortunately, did not succumb to it as he feared. The medical records indicate that Tolbert remained afebrile and asymptomatic during quarantine, and was released from quarantine after fourteen days. *See* DN 125 (Med. Records), pp. 2, 3, 6, 30-36, 41, 74. He is continuing to serve his sentence in the Medical Center so that his ongoing medical needs are addressed.

Tolbert's concern that he faced the potential for infection with the COVID-19 virus in the facility and was more susceptible to adverse outcomes if infected is now moot, as he did contract the virus, was treated for it, and the medical records delineate his exposure as "resolved." Thus, Tolbert has failed to articulate an extraordinary and compelling reason for compassionate release on this basis. A number of other courts have reached a similar conclusion with respect to COVID-19-recovered inmates who sought compassionate release due to fear of exposure and serious illness. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477 ((D.Nev. May 28, 2020)("And fortunately the notion that keeping Purry incarcerated during this pandemic would 'render his remaining imprisonment term a death sentence' due to his preexisting medical issues has also proven false. Purry's medical records reflect that he has been entirely asymptomatic since contracting COVID-19."); *United States v. Cabrera*, No. 10-cr-20016-JES-DGB, 2020 WL 2549941 (C.D.Ill. May 19, 2020)("Because Defendant Cabrera remains asymptomatic despite testing positive for COVID-19, the risk of him suffering severe complications from the virus is significantly diminished

compared to others in the BOP who have either not contracted the virus or who have either not contracted the virus or who have contracted the virus and exhibited symptoms or complications."); *United States v. Eddings*, No. 2:09-cr-00074-JAM-AC, 2020 WL 2615029 (E.D.Cal. May 22, 2020)("And given that he has had the virus for over 10 days now without complications, the Court cannot find Defendant's situation to be an 'extraordinary or compelling circumstance' that warrants his release."); *United States v. Zahn*, No. 4:18-cr-00150-JD-1, 2020 WL 3035795 (N.D.Cal. June 6, 2020)("the immediate threat to Zahn has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. §3582(c)(1)(A)(i).").

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Tolbert's crimes weigh against release as he poses a very real danger if released from custody. The Court agrees for a number of reasons.

First, Tolbert was convicted of armed robbery and possession of a firearm by a convicted felon. DN 56, p. 1. The defendant held an employee of a Long John Silver's restaurant at gunpoint and demanded cash from the register and safe. He made the employee and a witness lie on the floor while he exited through the back door. Tolbert was found to qualify as a career offender. Prior to the crime for which he is currently incarcerated, he had convictions for sixteen

counts of armed robbery in Kentucky and Indiana over a period of fourteen years. He received significant sentences for these armed robberies in 1979 (15 years), 1986 (10 years), 1992 (30 years) and 1993 (26 years). He has repeatedly violated parole. DN 57, pp. 9-12. Tolbert was also found to have been conducting a gambling pool and was in possession of gambling paraphernalia during his present incarceration. DN 125-1.

Second, the sentencing factors were thoroughly and carefully considered in imposing sentence in this case. The nature and circumstances of the offense, the weight of the evidence, Tolbert's history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by Tolbert's release were taken into account in reaching the imposition of a 121-month prison sentence. The Court finds no ground to justify any reduction in Tolbert's sentence, and Tolbert has articulated none.

Finally, there is no entitlement to appointment of counsel post-trial, and the circumstances do not warrant it. Appointment of counsel will therefore be denied.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motions of the defendant, William Louis Tolbert, Jr., *pro se*, for compassionate release (DNs 117; 121) are **DENIED.** His request for appointment of counsel is also **DENIED.**

July 10, 2020

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc: Counsel of Record
William Louis Tolbert, Jr., *pro se*
#04711033
Federal Medical Center Lexington
P.O. Box 14500
Lexington, KY  40512

8