UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                                                NO. 3:08-CR-142-CRS

WILLIAM LOUIS TOLBERT, JR.                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of the defendant William Louis Tolbert, Jr.'s third *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). DN 129. His prior motions (DNs 117, 121) were denied. Tolbert's first motion was denied for failure to exhaust administrative remedies. DN 120. His request for release to home confinement also asserted in that motion was denied for lack of jurisdiction. *Id.* His second motion for compassionate release was denied on the merits in a Memorandum Opinion and Order. DN 127.[1]

Tolbert's second motion was denied one year ago, at a time when there were a significant number of COVID-19 infections among the prison population. At the time of that writing in July of 2020, the Bureau of Prisons ("BOP") reported that FMC[2] Lexington had tested 892 inmates of which 239 tested positive for the virus. As the pandemic raged and the Bureau of Prisons ("BOP") sought to bring the outbreaks in various institutions under control, Tolbert himself

---

[1] The present motion is essentially the same motion made and addressed a year ago. The United States notes this reassertion of prior arguments but does not contend that the motion is precluded. The United States has conceded that Tolbert exhausted his administrative rights as to this motion.

[2] "FMC" is the abbreviation used to designate the Federal Medical Center Lexington.

contracted COVID-19. As we noted in our earlier opinion, "he contracted the virus and, fortunately, did not succumb to it as he feared. The medical records indicate that Tolbert remained afebrile and asymptomatic during quarantine and was released from quarantine after fourteen days. *See* DN 125 (Med. Records), pp. 2, 3, 6, 30-36, 41, 74. He is continuing to serve his sentence in the Medical Center so that his ongoing medical needs are addressed." DN 127, p. 6. As of this date, there are no cases of COVID-19 reported at the institution and 828 inmates and 324 staff have been fully vaccinated against the virus.[3] Although made available to him, Tolbert declined to be vaccinated.

Tolbert is 62 years old and is incarcerated in FMC Lexington where he is serving a 180-month prison sentence for armed robbery, use of a firearm during a crime of violence, and being a felon in possession of a firearm. He qualified as a career offender at sentencing. DN 57, Presentence Report, pp. 4-5. Tolbert has various serious health conditions for which he is regularly monitored and treated. He claims, as he did in his prior motion, his health conditions place him at an increased risk for developing serious illness or suffering death should he contract COVID-19. He argues that the risk of contracting the virus and his maladies combine to yield "extraordinary and compelling reasons" for this Court to consider granting him compassionate release.

> Tolbert contends that his
>
> health has deteriorated since his compassionate release petition of May 2020, to include 62 years of age, type 2 diabetes (rather than pre-diabetes), stage 3 kidney disease, anemia, and monitoring for prostate cancer (due to elevated PSA levels). Petitioner is also undergoing testing due to difficulting [sic] breathing and fatigue since his COVID-19 infection and recovery.

---

[3] *See ;* https://www.bop.gov/coronavirus/; https://www.bop.gov/locations/institutions/lex/ (last visited July 22, 2021).

DN 134, p. 2.  He himself states, however, "While neither the virus or petitioner's illnesses alone constitute extraordinary and compelling reasons for compassionate release, in conjunction they represent the essence of extraordinary and compelling reasons that compassionate release was established to address."  DN 134, p. 7.  Thus, despite a litany of health conditions, Tolbert admits that even at this time with further deterioration of his health, his medical conditions alone do not rise to an "extraordinary and compelling" level.

The United States has provided the Court with over 200 pages of medical records under seal spanning the time period mid-2020 through the end of May, 2021.[4]  These medical records confirm what Tolbert's has already acknowledged- that his combined medical conditions are not, in themselves, an "extraordinary and compelling" reason for compassionate release.

Tolbert has been regularly evaluated and treated for his various health conditions while incarcerated.  Over the past year, his PSA was monitored for possible prostate cancer. His PSA level increased from 2019 to 2020 but remained stable thereafter for over a year.  His PSA was "not overly elevated above the accepted normal range for his age."  DN 133, p. 190.  Tolbert's examination in February of 2021 was "benign." The urologist indicated he "would not recommend a biopsy at this time," and indicated the appropriate follow-up in 6 months and in 1 year. DN 133, pp. 180, 104.

Tolbert had a CT scan in February of 2021 and an echocardiogram in March of 2021. This was routine monitoring for an ascending aortic aneurysm which was found again to be "stable."

In May, 2021, Tolbert complained he was short of breath with mild exertion, indicated in the medical records as "a new complaint since the coronavirus infection last year." DN 133, p.

---

[4] The United States previously filed medical records along with its response to the 2020 motion for compassionate release.

169. Further investigation was conducted, including a "6-minute walk test" ruling out a cardiac issue. DN 133, p. 165.

Also in May, 2021, a vision screen was performed to evaluate for glaucoma. The result indicated "no glaucomatous type defects," but indicated that "cataracts may have a role in decreased peripheral threshold." DN 133, p. 90.

As of June, 2021, the medical records list his current medical conditions to include:

Hyperlipidemia – controlled

Hypertension – controlled

Peripheral Vascular Disease – controlled; no follow-up needed

Aortic Aneurysm w/o rupture – stable; imaging, follow-up every two years

Type 2 Diabetes Mellitus      diagnosed 2/21

Age-Related Cataracts

Chronic Kidney Disease Stage 3 (moderate) – evaluated by nephrology, stable, no need for further nephrology follow-up, monitor with labs

Elevated PSA – mild

Shortness of breath w/exertion[5]

DN 133, p. 86. With the exception of his development of Type 2 Diabetes in February of 2021 for which there is little information in the medical records, it appears that Tolbert has been receiving care for these conditions over a long period of time. It further appears that FMC Lexington's monitoring and treatment has rendered most of his medical conditions controlled or stabilized. While he describes himself in his motion as a "sickly old man," he is not significantly physically restricted with the exceptions of running, jogging, and handball. He has also received

---

[5] "Mild anemia" noted and evaluated in May, 2021 is not mentioned in the June list of "Current Medical Conditions." The anemic condition was referenced in evaluation of blood chemistry results in May. The medical records do not extend beyond May 26, 2021.

4

an elevator pass. He is housed in a cell with a lower bunk assignment. The medical records list no other physical restrictions. DN 33, p. 66.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id*. We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

This Court noted in our prior opinion that:

> Tolbert's concern that he faced the potential for infection with the COVID-19 virus in the facility and was more susceptible to adverse outcomes if infected is now moot, as he did contract the virus, was treated for it, and the medical records delineate his exposure as "resolved." Thus, Tolbert has failed to articulate an extraordinary and compelling reason for compassionate release on this basis.  A number of other courts have reached a similar conclusion with respect to COVID-19-recovered inmates who sought compassionate release due to fear of exposure and serious illness.  *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477 ((D.Nev. May 28, 2020)("And fortunately the notion that keeping Purry incarcerated during this pandemic would 'render his remaining imprisonment term a death sentence' due to his preexisting medical issues has also proven false.  Purry's medical records reflect that he has been entirely asymptomatic since contracting COVID-19."); *United States v. Cabrera*, No. 10-cr-20016-JES-DGB, 2020 WL 2549941 (C.D.Ill. May 19, 2020)("Because Defendant Cabrera remains asymptomatic despite testing positive for COVID-19, the risk of him suffering severe complications from the virus is significantly diminished compared to others in the BOP who have either not contracted the virus or who have contracted the virus and exhibited symptoms or complications."); *United States v. Eddings*, No. 2:09-cr-00074-JAM-AC, 2020 WL 2615029 (E.D.Cal. May 22, 2020)("And given that he has had the virus for over 10 days now without complications, the Court cannot find Defendant's situation to be an 'extraordinary or compelling circumstance' that warrants his release."); *United States v. Zahn*, No. 4:18-cr-00150-JD-1, 2020 WL 3035795 (N.D.Cal. June 6, 2020)("the immediate threat to Zahn has passed, fortunately with no serious complications of any kind.  That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. §3582(c)(1)(A)(i).").

DN 127, pp. 6-7. Nothing concerning Tolbert's current health conditions serves to alter this analysis. Further, we note that, presently, the risks of contracting COVID-19 and becoming seriously ill therefrom are substantially reduced due to (1) the likelihood that Tolbert has developed some level, albeit to an unknown degree, of naturally-induced immunity to the virus from his prior contraction of it, the (2) the prevalence of vaccinations among staff and inmates at FMC Lexington, and (3) the elimination, to date, of COVID-19 cases in the facility.[6]

---

[6] Tolbert references an outbreak of 19 cases of COVID-19 in a particular unit at FMC Lexington in May, 2021, and he states that 7 of the infected individuals had previously been vaccinated.  He provides no evidence in support of

As of this writing, the Bureau of Prisons website (https://www.bop.gov) reports no cases of COVID-19 at FMC Lexington, and this has been the case for many weeks now. Further, 828 inmates and 324 staff members have received the COVID-19 vaccine to date. FMC Lexington houses 926 inmates. Thus, while Tolbert himself declined to receive the vaccine, many of those with whom he must come in contact are taking steps to prevent any further occurrence of the coronavirus in the prison. *See* www.cdc.gov, Benefits of Getting Vaccinated: "COVID-19 vaccines are effective. They can keep you from getting and spreading the virus that causes COVID-19."

As Tolbert's health concerns are bound up with the risk of contracting COVID-19 at FMC Lexington, the fact that the possibility of contracting the virus there is presently highly unlikely militates against a finding of an extraordinary and compelling reason for compassionate release. *See United States v. McIlveen*, No. 4:15-cr-00403, 2021 WL 2463847 (N.D.Ohio June 17, 2021) *citing United States v. Carr*, No. 20-5784, 2020 U.S. App. LEXIS 33773, at *5 (6th Cir. Oct. 26, 2020) (citing "that the existence of Covid-19 and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release") (other citations and quotes omitted)).

The United States has consistently encouraged the Court to follow a number of decisions from other jurisdictions and find that an inmate's refusal of the COVID-19 vaccine renders his motion for compassionate release a non-starter. *See, ie. United States v. Jackson*, 2021 U.S. Dist. LEXIS 39807 at *4 (D. Minn. Mar. 3, 2021) (Magnuson, J.) ("Jackson's decision to refuse the

---

this assertion, nor does he indicate whether any of those afflicted were symptomatic or whether any became seriously ill. He also raises the specter of possible future outbreaks of the Delta variant occurring at FMC Lexington. While FMC Lexington struggled with COVID-19 cases at the height of the pandemic, we must assess the situation in real time based on the most current information made available to the Court. We address each motion for compassionate release individually with consideration addressed to the particular defendant under the particular circumstances presented. The Court cannot base these decisions on unsubstantiated allegations or vague "what ifs" about what might possibly occur under future unknown scenarios.

vaccine flies in the face of any medical recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.") The United States Court of Appeals for the Sixth Circuit has not directly addressed the implications of an inmate's refusal of the vaccine, although it did recently find in an unpublished decision that there was no abuse of discretion in a district court's conclusion that a defendant who "failed to utilize the services and tools to assist his health" undermined his claim of extraordinary and compelling reasons for early release, even in light of the COVID-19 pandemic. *United States v. Taylor*, No. 20-4241, 2021 WL 2182320, *2 (6th Cir. May 28, 2021)(defendant was obese with high blood pressure and non-compliant with medication and weight loss guidance). This Court declines to take such a hard line, but instead notes that Tolbert's decision to decline the vaccine, while perfectly within his right, was a personal decision not to further mitigate the already very significantly reduced risk of complications from contracting COVID-19. Thus, his fear is partially of his own volition.

In any event, Tolbert has likely developed some degree of immunity to the virus through his prior contraction of COVID-19. He has already contracted and recovered from the virus. The medical records indicate that he remained afebrile and asymptomatic when he contracted COVID-19. This was good news at the time as he was able to withstand the onslaught of the virus without symptoms and recovered. Although he now indicates he has some shortness of breath since being infected, the medical records indicate that he was evaluated for this shortness of breath and there is no indication that treatment was required. This is a far cry from the crippling lung damage reported by so-called "long-haulers" after becoming seriously ill from the infection.

In *United States v. Billings*, 2020 WL 4705285 at *5 (D. Colo. Aug. 13, 2020), a case in which an inmate with hypertension and obesity survived infection with COVID-19, the court noted that

> Of course, it is not yet known whether having been infected with the COVID-19 virus confers immunity from reinfection, although there is some evidence suggesting recovered individuals may have at least temporary immunity.[7] At this point, however, the possibility of reinfection, if not impossible, is strictly hypothetical. That uncertainty militates against an entitlement to compassionate release. *See United States v. Entz*, 2020 WL 3542862 at *3 (W.D. Wash. June 30, 2020)… Although some courts have found compelling circumstances where a defendant suffering from other comorbidities already had been infected with COVID, those decisions appear to have been prompted more by the courts' concern that the facility was unable to address the defendant's other medical issues adequately. *See United States v. Bandrow*, 2020 WL 4050242 at *3, *6 & n.4 (E.D. Mich. July 20, 2020) (prison had been unable to address defendant's hematuria (the presence of blood in the urine, indicative of possible severe kidney disease) for more than six months); *United States v. Yellin*, 2020 WL 3488738 at *3 (S.D. Cal. June 26, 2020) (76-year old inmate with multiple comorbidities unable to provide self-care under prison conditions); *United States v. McCall*, ––– F.Supp.3d ––––, 2020 WL 2992197 at *5-*6 (M.D. Ala. June 4, 2020) (physician credibly testified that defendant's sickle cell disease made him especially vulnerable to risk of death from COVID and required close, regular monitoring which prison was unable to provide); *United States v. Sholler*, 445 F.Supp.3d 265, 2020 WL 2512416 at *5 (N.D. Cal. May 15, 2020) (defendant who suffered from incurable, progressive illness was completely disabled and totally confined to a bed or chair). Mr. Billings's circumstances are not comparable. There is nothing in the record to indicate his hypertension is not controlled with adherence to his prescribed medical regimen, and numerous courts have found that a defendant's obesity or obesity plus hypertension do not in themselves present compelling reasons warranting compassionate release. *See e.g., United States v. Pohahau*, 2020 WL 4588522 at *4 & n.5 (D. Haw. Aug. 7, 2020); *United States v. Wilfred*, 2020 WL

---

[7]The *Billings* court notes recent medical authority suggesting the development of antibodies in individuals who have been infected and recovered from COVID-19: ***See, e.g.***, Dr. Robert D. Kirkcaldy, et al., *COVID-19 and Postinfection Immunity, Limited Evidence, Many Remaining Questions*, Journal of the American Medical Association 2245, 2246 (May 11, 2020) (available at: https://jamanetwork.com/journals/jama/fullarticle/2766097) ("[E]xisting limited data on antibody responses to SARS-CoV-2 and related coronaviruses, as well as one small animal model study, suggest that recovery from COVID-19 might confer immunity against reinfection, at least temporarily. However, the immune response to COVID-19 is not yet fully understood and definitive data on postinfection immunity are lacking.") (last accessed August 11, 2020); Dr. Francis Collins, NIH Director's Blog, *Study Finds Nearly Everyone Who Recovers From COVID-19 Makes Coronavirus Antibodies* (May 7, 2020) (available at: https://directorsblog.nih.gov/2020/05/07/study-finds-nearly-everyone-who-recovers-from-covid-19-makes-coronavirus-antibodies/) ("Although more follow-up work is needed to determine just how protective these antibodies are and for how long, these findings suggest that the immune systems of people who survive COVID-19 have been primed to recognize SARS-CoV-2 and possibly thwart a second infection.") (last accessed August 11, 2020).) In addition, a recent study of 285 patients (and 790 individuals with whom they came in contact) from the Korea Centers for Disease Control and Prevention found that recovered COVID-19 patients who test positive again were not infectious. ***See*** healthline, *People Who Test Positive for COVID-19 After Recovering Aren't Infectious* (May 26, 2020) (available at: https://www.healthline.com/health-news/people-reinfected-with-covid-19-werent-infectious) (last accessed August 11, 2020).)
*United States v. Billings*, No. 19-CR-00099-REB, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020).

4365531 at *5 (E.D. La. July 30, 2020); *United States v. Lavatai*, 2020 WL 4275258 at *3 (D. Haw. July 24, 2020); *United States v. Gordon*, 2020 WL 3971013 at *3 (E.D. Mich. July 14, 2020); *United States v. Whiteman*, 2020 WL 4284619 at *1 (E.D. Pa. July 27, 2020); *United States v. Takewell*, 2020 WL 4043060 at *3 (W.D. La. July 17, 2020); *United States v. Wax*, 2020 WL 3468219 at *2-3 (D.N.J. June 25, 2020); *United States v. Reynolds*, 2020 WL 3266532 at *4 (W.D. Wash. June 17, 2020).

The research since the court decided *United States v. Billings* further supports findings of the development of robust immunity after recovering from COVID-19 infection. https://www.washingtonpost.com/health/post-infection-coronavirus-immunity-usually-robust-after-8-months-study-shows/2021/01/07/d7d369a6-511a-11eb-b96e-0e54447b23a1_story.html *See also, United States v. Johnson*, No. 11-20493, 2021 WL 822495 (E.D.Mich. Mar. 4, 2021)(risk of reinfection before being vaccinated did not support finding of extraordinary and compelling reason warranting compassionate release, noting "This is because, in order to release Johnson presently, the Court "would need to speculate as to whether there is a medically recognized possibility of becoming re-infected with COVID-19, and if there is, whether he would likely contract the disease once again." *United States v. Benson*, No. 03-80139, 2021 WL 527280, at *2 n.1 (E.D. Mich. Feb. 12, 2021)"). *See also*, *United States v. Smith*, No. 10-20388, 2021 WL 3077879 at *2 (E.D.Mich. July 21, 2021):

> Because Smith has already contracted and recovered from COVID-19, the relevant inquiry is whether Smith has a high risk of reinfection. Under current CDC guidance, "[c]ases of reinfection with COVID-19 have been reported, but remain rare." CDC, Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html [https://perma.cc/5X2L-KU4V]. Although "the probability of SARS-CoV-2 reinfection is expected to increase with time after recovery from initial infection because of waning immunity and the possibility of exposure to virus variants," an "increasing number of published studies suggest that," presently, ">90% of recovered COVID-19 patients develop anti-SARS-CoV-2 antibodies" and "[a]dditional studies also demonstrate antibody response...can be durable for 6 months or more." CDC, Interim Guidance on Ending Isolation and Precautions for Adults with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html [https://perma.cc/A3JB- L29W]. Because Smith tested positive for COVID-19 one year ago, he likely developed antibodies that are potentially still providing him with immunity from the virus. As a result of these antibodies, Smith's risk of reinfection is low. A low risk of reinfection is not

11

an extraordinary and compelling reason warranting release. See, e.g., *United States v. Johnson*, No. 11-20493, 2021 WL 822495, at *3 (E.D. Mich. Mar. 4, 2021); *United States v. Jackson*, No. 17-55, 2021 WL 467590, at *2 (N.D. Ohio Feb. 9, 2021).

Based of the current stability of Tolbert's health conditions, the continual medical monitoring he is receiving, the significant percentage of vaccinations taken by inmates and staff at the institution, the absence of cases of COVID-19 presently at FMC Lexington, and Tolbert's prior contraction of and recovery from COVID-19, the Court concludes that Tolbert has failed to establish an extraordinary and compelling reason warranting compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

Tolbert spends considerable time addressing other factors such as his age, years in prison and evidence of rehabilitation.

> Other Courts have concluded that, while rehabilitation alone does not justify a reduction in sentence, that factor, when combined with others, may warrant relief under § 924(c). *See, e.g.*, *Clausen*, 2020 WL 4260795, at *7 ("Although Clausen's rehabilitation alone does not qualify him for a reduced sentence as a matter of law, *see* 28 U.S.C. § 994(t), nothing prevents the Court from concluding that a combination of factors, including rehabilitation, can together establish extraordinary and compelling reasons."); *see id.* (concluding that demonstrated rehabilitation plus the defendant's stacked sentence under the previous version of § 924(c) constituted extraordinary and compelling reasons for a sentence reduction) (collecting cases reaching the same conclusion).

*United States v. Moore*, 481 F. Supp. 3d 703, 711 (M.D. Tenn. 2020).

The Court concludes that these additional factors do not combine with Tolbert's otherwise unsuccessful argument concerning his health conditions and COVID-19 exposure risk to reach the "extraordinary and compelling" threshold and his motion for compassionate release must therefore be denied.

As there are no extraordinary and compelling reasons for compassionate release in this case, we need not address Tolbert's additional arguments or supplemental materials as they might apply to an evaluation of the 18 U.S.C. §3553(a) factors or the issue of dangerousness under 18 U.S.C. § 4142(g).  *See United States v. Elias*, 984 F.3d 516 (6th Cir. 2021)("[W]e clarify that, as in *Jones* and *Ruffin*, district courts may deny compassionate-release motions when *any of the three prerequisites* listed in § 3582(c)(1)(A) is lacking and do not need to address the others. *See Jones*, 980 F.3d at 1108 (emphasis added).

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the third motions of the defendant, William Louis Tolbert, Jr., *pro se*, for compassionate release (DNs 129) is **DENIED.**  The motion of the United States to file medical records under seal (DN 132) is **GRANTED.**

July 26, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc:  Counsel of Record
William Louis Tolbert, Jr., *pro se*
#04711033
Federal Medical Center Lexington
P.O. Box 14500
Lexington, KY  40512

13